Good morning. Good morning. May it please the court, I'm Roy Drips for the plaintiff appellant Jeffrey Walters and I have requested five minutes to reserve for you. Recognized, and I quote, the driver of the vehicle was unable to see the turn in time. The vehicle ran over an embankment when the driver finally executed the turn. That scenario, as phrased by the district court, describes acts of negligence. What is the duty that you claim was breached by the defendant driver? I'm going to take that in two steps because there's an implicit agency issue in your question. Assuming there's agency, for negligence you have to establish a duty and a breach of duty. Your complaint alleges the legal conclusion that there was negligence here, there were injuries. I don't see in your complaint a duty alleged and a breach of a duty. And so I'm asking you today, what is the duty you claim was breached and where does that duty arise? The duty arises from the Federal Employers Liability Act. And that statute imposes a duty on the defendant railroad to exercise ordinary care to provide the That's a legal conclusion too. Normally in a motor vehicle case, you look at different sources. This is Kentucky, I think. You would look to the Kentucky Motor Vehicle Code, which would establish you have a duty of safe lookout, you have a duty to have a safe distance between your car. Specific duties here. You allege a legal conclusion of negligence, but without a specific duty. That's the problem I have. The duty is to remain on the roadway. Okay, all right, there's a duty to remain on the roadway. Where does that duty come from then? Does it come from Kentucky law? Common law duty. I think it's something that is implicit any time somebody gets behind the wheel of a vehicle. You stay on the paved portion of the roadway unless there's some overarching reason to depart from the roadway. And that wasn't present in this case. Okay, is this a public road, this gravel road? It is. I mean, I see your argument mainly that there was an accident, and because there was an accident, there must be negligence. Well, that's a theory of Ray Zips, a locator, but you haven't pled that, and you didn't argue that below either. No, I think that the complaint was not particularly well drafted, but what I would suggest to the court is that the district court's order recognized that the plaintiff was claiming the very act of driving off the road was negligence. But see, okay, I mean, you could drive off the road and not be negligent. You could. You can agree with that, right? Absolutely. And it's your duty to establish that the act of driving off the road was, in fact, negligence. It's not their duty to rebut it, is it? Well, if they are going to claim that there is a reason that the driver went off the road that is not negligent, they've got to come up with some evidence for that. And the case law that we cite, including the ALR annotations, all say if you go off the road, unless there is some reason in the record, then that is negligence. And there are two... See, if there were a duty under the Kentucky Motor Vehicle Code of staying on the road, then it would be perhaps negligence per se or evidence of negligence that you violated this specific duty that's set forth in law. But you haven't alleged any duty set forth in law. You just have these general conclusions. Isn't the best way to tee it up for you and your opponent here that the duty is to provide this safe work environment? And your argument is that when you're riding along in a car, the safe environment envisions you staying on the road. You're not dallying off into driving across somebody's front yard. So if that's the duty, and you have to convince us that it is, the question is why did he get off the pavement or the gravel and get onto the driveway? And if there was some unavoidable reason for that, then it's probably not negligence. But doesn't it come down here to a question of fact whether seeing the turn, you've alleged that he saw the turn, knew that he couldn't make it safely, yet turned anyway. Yes. That's why going off into the yard then violated this duty to keep the employee safe. Is that it? That's exactly it. So if we've teed that up, then we need you to explain why that is the case and he to tell us why it's not. All right. In the district court, the plaintiff argued, and this is document 68, that's at page 3588. And the reason I'm going into the record this deeply is because of their waiver argument. They claim that we didn't raise these things below. But the plaintiff argued either the driver was not paying attention and therefore didn't see the road onto which he was turning, or he did see it and failed to maintain control of his vehicle. Either way, those acts or omissions are negligent. You can't just drive off the road unless there is some other issue. And there was no evidence that there was an animal. There was no evidence that there were adverse weather conditions. There was no evidence of a mechanical failure in the crew van. So in the absence of some intervening cause in the record, the fact that the driver drove off the road should be sufficient to sustain plaintiff's burden under the FELA. And I think that's... That's where you get yourself in trouble. That's almost reciprocal. The accident occurred, so therefore there was negligence. That's exactly what Jennifer Griffin is asking you. All right. I was going to respond to Judge McKeague first. Go ahead. Thank you. The plaintiff testified that the driver turned too late to make the turn. He was past the road when he tried to turn. That's specific negligence. Well, the failure to make a turn is itself negligence? When you're past the point that it can be done safely... Well, that really is arguing because you had an accident, you must be negligent, but that's not what the law is. I mean, something causes an accident, but it doesn't mean it's necessarily negligent conduct. And getting back to you really need a duty and a breach of duty. The failure to provide a safe environment for employees, and this violates that duty, that sounds like a conclusion too, that I'm not sure that that's factually based. And just a conclusion itself, that there's an accident and therefore there's a failure to provide a safe working environment, I'm not sure is sufficient. Well, I think in this case a jury could find, and the plaintiff testified, that there was nothing to prevent the driver from simply stopping, if he didn't know where he was, backing up, and then making the turn safely. I think a jury could find from that evidence that the driver was negligent for proceeding when he either didn't know where the curve was, or he did and he executed the turn improperly. Both of those are negligent acts. And Judge White, I'm sorry, I kind of deviated. Okay. Negligent acts from what? I mean, what does it arise from? I mean, if it's not the Kentucky Motor Vehicle Code, is it? I mean, we're dealing with a federal common law here, F-E-L-A. Is there a case that says that, that establishes a duty? Is there some authority that establishes a duty? Where does this duty arise? Well, we've cited in our brief multiple cases concerning the duty of a driver to stay on the roadway unless there is some reason, some other cause that causes him to leave the roadway. And I understand the court's question, and the axiom has always been that the mere happening of an accident isn't itself evidence of negligence. But when the accident is caused by a negligent act, and we've got two different things in the record, then those things are evidence of negligence. You're saying this isn't a situation where somebody happened upon a car in the ditch, and nobody knows how it got there. This car got in the ditch because the driver made a turn where he shouldn't have made a turn. But there's no evidence he was not paying attention, that he was tired or he was under the influence or anything. He just did not make a turn. And that itself is supposed to be negligence. Well, we're talking about ourselves here. Your argument is that he went by the street, and when he turned it was too late. Exactly. So that's your alleged negligence. And your argument is there's a question of fact as to whether that's actually what happened here, right? Absolutely. All right. You'll have your rebuttal. Thank you, Your Honor. May it please the Court, Counsel. My name is Robert Ryan. I'm from the law firm of Steptoe & Johnson from our Morgantown, West Virginia office. And I'm here today on behalf of CSX Transportation. The deposition testimony of both Walters and Jones paint a clear picture of the driver operating the vehicle in a reasonable, appropriate, and careful manner. Those are the words of the Honorable Danny Reeves of the Eastern District of Kentucky after he had viewed all of the evidence the plaintiff could produce to support their allegation that the plaintiff was injured as a result of the negligence of CSX. Simple question here. Yes, sir. There is evidence in the record that he saw the turn too late to make it, yet continued to try to make the turn and went off the road. Is that a fair statement? I think the record reflects that he went off the road, Your Honor. There's no testimony from the driver to what he saw or did not see. I thought one of the passengers is the source of the claim that he turned too late. Mr. Jones, yes. From Mr. Jones' testimony, he said that the turn was executed too late to make it. Okay. Yes, sir. So if there is some factual basis for that, whether you agree with it or not, then why is that not enough alone to, if believed by a jury, to constitute negligence? Because there's ample evidence in the record, and actually it is from Mr. Jones too, that the roadway was obscured. The roadway could not be seen until you were too close to it to make the turn. Then you stop and you either find a place to turn around or you back up. Your Honor, I guess those are possibilities, but what the evidence in the record is they came over a one-lane bridge in a very dark rural area, moving very slowly and very carefully, and before anything could happen, they were off the road. One tire was off the edge of a rural roadway. There is no evidence that there was time to stop. There is no gap in the testimony from either Mr. Jones or Mr. Walters that were both alert and awake in the car that evidences any negligence whatsoever. There is no span of time. If you have time to turn the wheel, to turn to the side road, then why don't you have time to stop? They said he was only going, what, three or five miles an hour? They said it was below 10, Your Honor. The exact speed was not in the record other than he was moving slowly and appropriately. What bothers me here is I suspect there's nobody in this courtroom that hasn't been driving along and all of a sudden realized they needed to take a turn for whatever reason, and they were right on the place where they wanted to be or they were a little bit past it and they had to decide, do I turn and maybe endanger people or do I keep going and turn around and come back? We all do that on almost a daily basis. I agree with you. But you've done that too, right? I did that this past weekend, Your Honor. I was on a rural road and I had a tire off the edge of the roadway. It was flat. I turned right back on the roadway. This was a bad spot for it to happen. Of course those things happen, but the record is reflective that there is not an instant that the driver was behaving badly, that he was acting appropriately all throughout the event. Why isn't it a factual question as to whether he should have continued on straight? Because according to the drawing and I guess it's somebody's investigative report, he could have gone straight, right? He would have driven both the entire vehicle into the front yard if he would have gone straight, Your Honor. No, no, no. Before he made the turn, it wasn't as if the road only went that way. He had no choice. The road went straight. He could have gone straight. Your Honor, the road split. I'm not familiar with the exact part of the record that you're referencing. I'm just looking at this investigative report, and at least on the drawing, it appears as if the road went straight. Is that wrong? If that's wrong. It is wrong, Your Honor. As a matter of fact, and it's an exhibit to either Mr. Jones or Mr. Walter's testimony, there's a Google Earth picture. There's what? There's a Google Earth picture of the intersection that shows it from the top. So no. So you're saying he couldn't have gone straight back to where Judge White and I were. He basically either had to stop and back up, or he had to turn. Yes. Yes, Your Honor. The evidence shows, or the record shows, as soon as they came over this little bridge, even though he was moving very slowly and carefully, the road split, and he couldn't make the turn fast enough. As a counsel, I mean, when you have this kind of situation, yes, people make judgments. But one, we accept that you're not supposed to drive a car where you can't see. I mean, that's something that a reasonable person understands, general duty of care. I mean, you're driving a dangerous instrument. You don't go where you can't see. And if the fact is that he couldn't see, then he really had to just stop and find out who's in the farmhouse. And sorry to bother you, but I've got a truck in the dark, and I don't know where I'm going, or whatever it is. But just because he was driving slowly and responsibly until that moment, I don't see how that negates that what he did after could have been negligent. Your Honor, you would have to assume the negligence from the actual event, because the evidence in the record produced by the plaintiff was that this driver was at all times acting appropriately. No, it wasn't at all times. It was up until that moment he was acting with due care. Not at all times. Your Honor, I would assert that there's nothing in the record that demonstrates he could have stopped before he went over there. Well, he stopped for a moment, didn't he? He never stopped the car until it was over the embankment. Okay. Well, presumably you can stop. I mean, there's certain common sense inferences. Presumably you could stop, Your Honor, but there's no evidence. Neither one of the passengers, neither one of the witnesses to the accident said that he could have stopped before he went over. They said he should have. They're complaining that the event happened. And maybe I'm parsing words, Your Honor, and I don't intend to. Well, I mean, it would be very interesting if this was your typical car accident case. If judges dismissed your routine car accident case because the person was driving lawfully until something happened or until they made a sharp right-hand turn into nowhere. It's just he – no one is saying that because there was an accident he did something wrong. They're saying he made a turn where there was no road or where it was too late to safely turn onto the road. And, Your Honor, there's nothing in the record that he had any other reasonable choice that would have stopped the accident. But that's usually a defense. Well, Your Honor, the plaintiff has to prove that something negligent happened. And the positive evidence in the record was that there was no behavior on the part of the driver that lacked ordinary care. The driver turned the vehicle, right? That's in the record. There was a quick steer at the last second that was unable to be made. Yes. That's Mr. Jones' testimony. Maybe this doesn't ultimately make any difference, but I'm still confused because the drawing showed that he just could have kept going in the same direction he was going. You say that's not correct. You say the road, I think you said split? It comes across this little bridge and then splits, yes. And the yard is directly in front. You're using your hands here. What does that mean? He had to turn either right or left? He couldn't go straight? That's what the record reflects, Your Honor. And the form that Your Honor is looking at, that's a form from a third party. No discovery was done on that form. It was given to CSX by PTI. It is what it is. It is. So in the opinion, it said Jones testified that the driver was moving at a slow speed while looking for a turnoff that blended in with the front yard and gravel adjacent to the paved road. So it sounds like the paved road was going in some direction, and he was leaving the paved road to go onto a gravel road that I gather went off to the left. Well, I believe Mr. Jones' testimony that it was gravel and grass and it wasn't paved. But, Your Honor, it doesn't – I'm just reading from the judge's opinion, so that's wrong? Mr. Walter said it was blacktop. Mr. Jones said it was gravel and grass like an old country road. Okay. So ignore what the surface of the road was. Could he have continued on without making the turn? I believe the record reflects if he would have continued straight, he would have taken the entire vehicle into that front yard. And you think our best place to sort this out is Google Earth? Well, Your Honor, actually, Mr. Walters testified he couldn't pick it out on a map. He could not show you where he was negligent. He could not produce without the help of CSX and deposition. He couldn't produce the location of where he was hurt. So he could not come into a courtroom by himself, and he testified to this, he couldn't come into a courtroom by himself, point out on a map, I got hurt here and this is why. That's the plaintiff's obligation to bring proof into a courtroom. But, yes, I, as the deposing lawyer, took a picture from Google Earth to his deposition so that we could have a picture of the scene. So, yeah. That is the best evidence that we have. Was that presented by anybody to the district judge? It was part of the, it was an exhibit to the depositions, Your Honor. Now, whether this district judge viewed it particularly, I don't know. You don't file depositions in federal court, do you? We do if we're going to trial, but they were part of the summary judgment record. All right. So in any event, somehow, you're saying we'll find it. They should be part of the depositions, yes, Your Honor. All right. They should be part of the record. I believe Mr. I'm trying to think of Mr. Walter's deposition. You're probably looking at about page 400 of their record. All right. Thank you. The court was asking Mr. Dripps about the standard, and the standard in FELA is simply ordinary care. It is not an insurer of perfect safety. The only duty a railroad has is that of ordinary care. This court has said, a railroad breaches its duty to its employees when it fails to use ordinary care under the circumstances or fails to do what a reasonably prudent person would have done under the circumstances. Is ordinary care normally an issue for the jury? It is, but you have to have proof that there's been a breach of ordinary care. And the plaintiff pays a lot of attention to some decisions, both of the Supreme Court and of this court, that address causation. But what those also say, and what this court has repeatedly said, is that negligence must be proven in order to get a FELA claim to a jury. There has to be proof of breach of ordinary care. And what the plaintiff has produced here is hundreds of pages of the driver behaving completely, perfectly, and appropriately. And the court found that. So let's assume for a second that you have a case like this where there simply was an accident. Your argument would be the mere fact of the accident doesn't establish that it happened in a negligent way. And I believe this court's recognized that there is such a thing as a faultless accident. So then we look to see if there were ways in which that accident could have or should have been avoided. Would that be fair to say? I believe that's reasonable, Kerry, yes. And if there wasn't any way to avoid it, the black ice or whatever, then again there's no evidence of negligence, right? Correct. But if there was a way to avoid it, stopping, going the other way, turning, whatever it is, then wouldn't that be a factual dispute about negligence? I would believe that's a hypothetical, Your Honor, because there's no evidence in this record of that negligence. There's no evidence in this record that the driver could have done something that would have prevented this accident. All of the positive evidence that the plaintiff has produced was that the obscured roadway came upon the driver quickly, even though he was moving very slowly and appropriately. But we're kind of beating a dead horse here probably, but I'm sort of back to where Judge White was. If he's driving very slowly and he's being cautiously, all of which is good, then at that point it seems like it's even easier than he could have just, it's even more clear that he could have just stopped, as opposed to driving down the highway at 60 miles an hour, you encounter black ice. Nobody's going to say you had the option to stop before you hit that black ice. Your Honor, I believe what the record reflects and what the plaintiff's evidence produces was that there wasn't time to stop. I would read it the opposite, and I believe the court did. He was moving so slowly that even though he had to be moving, because he was moving, that when the roadway appeared, there wasn't time to avoid leaving the roadway. So are you saying that he didn't make a turn? Your Honor, the only evidence on that is that Mr. Jones said that there was a quick steer at the last moment and the right front tire left the roadway. And the vehicle stopped there.  Wait, the vehicle stopped? It didn't go down? No. Only the right front tire left the roadway. That's how slowly he was moving. So that's how quickly he stopped the vehicle. I thought it was stopped by a cement wall that he went over. Well, it did come to rest. I mean, it could have kept going, Your Honor. It bottomed out on the frame hit a small embankment. You drive your tire over a wall and you're hung up on the wall. Your Honor, I believe that goes back to how slowly and carefully he was moving. The inertia of the vehicle stopped right there. And the district judge I had forgotten does cite Kentucky 189.290, which states the operator of any vehicle upon a highway shall operate the vehicle in a careful manner with regard to the safety and convenience of pedestrians and other vehicles on the highway. I guess that's the Kentucky statute that they're saying he violated, right? May I answer, Your Honor? That was cited below, and His Honor picked up on it. He did not find any negligence. I understand that, but at least that's allegedly where the duty arises. That's where the plaintiff said the duty arise below. It is not mentioned. That's what we were trying to figure out before. Where did the duty arise? And that's mentioned in our brief, and the appellant's briefs are silent on that issue on appeal. But that was argued in the district court. It's not in the complaint. I mean, I've got the complaint in front of me, and the complaint is just conclusory. There was a complaint, and I can't cite the Kentucky statute by number. But you did argue the Kentucky statute in the lower court, but have not argued it on appeal. Correct, Your Honor. Okay. Now, I recognize there was an early attempt to mediate this case, and also that you prevailed in the district court on summary judgment. But in view of the panel's question today, do you think that mediation might have some usefulness at this point? I do not believe so, Your Honor. I believe the lien situation is in such a posture that it's going to be unable financially to reach one. We tried, both sides tried very well in good faith to settle the case, and it just wasn't able. The what situation? I'm sorry. The lien situation. Liens, L-I-E-N-S. From the employer. Yes, the employee has incurred substantial liens on this claim. This would be either comp or medical claims, right? I'm sorry? Either comp or medical claims are the liens, I assume? Not necessarily, Your Honor. I don't want to go too far off the record. But, yes, there's a third-party contract. It's part of the CBA. Okay, so third-party involvement impairs mediation. It's part of the collective bargaining agreement. And then engineering employees, if they're injured in vehicles that are not on the terrain tracks, they get wage payments. So he has received substantial amounts of money from CSX already. Okay, any further questions? No. All right.  Rebuttal? Thank you, Your Honor. The district court's order recognized that the driver of the vehicle was unable to see the turn in time. There's nothing in the record that suggests that the driver could not stop, get out, look around, go back the way he had come. He was able to negotiate that area as far as he got in safety. And what do you say was the configuration of this turn? At one point, we got a drawing that says you could go forward. Apparently, that's not right. Then it was a claim the road split. That doesn't seem to be right. Then it was a claim that if you kept going straight, you'd end up in the front yard anyway. So the road veers slightly. Okay, so technically, I can't say he's incorrect that if you go straight, you wind up in the yard. But the road doesn't end. It just simply veers. And then there's a turnoff. Turnoff onto the road that took him up to the transfer point? Yes, sir. So the gravel road where he went off the gravel was a turnoff road? So if he didn't turn off, where would you go? You would keep going. I'm not sure where the road terminates ultimately, but not at that point. If you didn't successfully make the left, if you go over the bridge, you decide you're not going to go down that gravel road that goes to the left. Where would you go? Straight? Right? You kind of veer to the right. If the road continues. Okay, so the road curves to the right with a sharp turn to the left. Is that it? Yes, sir. You agree with that? Your Honor, it forms a Y. I do agree. Okay, thanks. Gee, that was hard. I think part of the problem is that the Google Earth photo he's referencing was not made part of the plaintiff's deposition. The only photographic exhibit that's part of the depot is a photo of the van. So I don't remember seeing the Google Earth photo in the record. At best, he might have showed it to him and asked him questions. Sure. And I think perhaps one or the other side should have brought that so that there would be clarity here. And that's as much plaintiff's fault as it is the defendant's. I think it's clear that if this were a common law case, there is no doubt it would go to a jury. It is a common law case, is it not? Well, it's under the Federal Employer's Liability Act. It uses federal common law, right? Sure, but under the statute. Okay, it's a statutory claim, but then we apply the law of negligence as decided by federal common law, right? Absolutely, right. But the federal common law doesn't differ in a negative way to impact the plaintiff's case under the FELA. This court has held multiple times in Aparicio and Hardiman that the plaintiff must provide more than a scintilla, but not much more. And here we've got direct evidence that the driver, who is the agent of the railroad, that was not disputed in the district court. The driver could have stopped, the plaintiff said that in his testimony, and didn't. And if he didn't know where he was going, he should have stopped, looked around, rather than proceeded. So for those reasons, we're asking that the court reverse the judgment of the district court and remand for further proceedings. Okay, I ask this question to defense counsel, but I'll ask it to you. Do you think there would be any benefit of referring this to our mediation office at this point? I do. I think that, sure, I'll be as practical as possible about it, Your Honor. If the plaintiff waives his wage loss claim, the railroad is not entitled to a set-off. They've paid wage benefits. So if the plaintiff has been paid, he's been paid. And the FELA contains a statutory set-off provision. I mean, we can discuss that in mediation. But to say that that's an absolute impediment to the parties resolving things, I think, is unduly pessimistic. Okay. All right. Thank you, counsel. The case will be submitted. May call the next case.